**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Richard BECK, Defendant-Appellant.**

**No. 74–1704.**

United States Court of Appeals,
Sixth Circuit.

March 11, 1975.

---

998

Daniel V. O'Brien, St. Louis, Mo., Harry E. Claiborne, Las Vegas, Nev., for defendant-appellant.

Thomas F. Turley, Jr., U. S. Atty., Glen Reid, Jr., Larry E. Parrish, Memphis, Tenn., for plaintiff-appellee.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Defendant-appellant ("appellant") was convicted at a jury trial in district court of violating the Hobbs Act, 18 U.S.C. § 1951 (1970),[1] and the bank theft statute, 18 U.S.C. §§ 2, 2113(b) (1970).[2] The district judge sentenced appellant to concurrent prison terms of twenty and ten years on the Hobbs Act and bank theft convictions, respectively.

1. "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

2. "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

The convictions stemmed from the taking on December 29, 1972, of approximately $50,000 from the Frayser branch of the National Bank of Commerce in Memphis, Tennessee. James J. Sledge, an assistant vice-president and manager of the Frayser branch, testified that in mid-morning (approximately 10:45 a. m.) he received a telephone call warning that,

> "I have a little bad news for you this morning, your home is being watched and your wife and grandchildren are being held as hostage. . . . Everything will be all right if you will go ahead and follow my instructions. My instructions are to get up fifty thousand dollars in hundreds, twenties and tens and deliver them to me. . . ." Trial Transcript at 50.[3]

Sledge testified that he then told his head teller to "fix me up" a cloth bag containing $50,000 and that he parked his car containing the bag in a certain parking lot. A bank customer, "ha[ving] an idea something was wrong because two [bank employees] were in tears, . . . and [because Sledge] had a worried look on him," followed Sledge in his automobile away from the branch and parked near Sledge's automobile in the parking lot. Then Sledge, as instructed, went from his automobile to a pay telephone booth from where he was unable to see his automobile. From his truck, however, the customer saw a man open the door of Sledge's automobile and remove the bag. The customer then followed that man and the person driving that man from the parking lot, eventually "get[ting] up close enough to get the[ir] license number" before they sped away from him.

Less than four hours later (approximately 2:40 p. m.), Memphis police located a locked automobile in a motel parking lot with license plates matching those that the customer had written down and approximating the description of the automobile the customer had trailed. Authorities discovered that no motel guest had registered the automobile, that the automobile was registered to a Shirley Mueller, of St. Louis, Missouri, that her husband, Lester Henry Mueller, Jr.,[4] was suspected in a similar bank extortion in Missouri, that a Lester "Milner" had registered at the motel, and that "Milner" gave the motel a non-existent St. Louis address and an incorrect automobile license number. The police then summoned certain investigators who began to "work the vehicle." Because of rain the car was towed shortly thereafter (approximately 5:10 p. m.) to a police impound lot where the processing, including a search of the trunk of the automobile, was completed.

Of the four errors appellant claims on appeal, we find one to be meritorious. Consequently, we vacate the Hobbs Act conviction; we affirm the bank theft conviction.

## THE HOBBS ACT VIOLATION

First, appellant claims that convicting him of violating the Hobbs Act and the bank theft statute violated the double

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2 (1970).

"Whoever takes or carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both." 18 U.S.C. § 2113(b) (1970).

3. Sledge's wife and grandchildren were never harmed and, in fact, were never held hostage.

The telephone line to Sledge's residence, however, had been cut preventing Sledge from contacting them and evoking alarm in Sledge in light of the caller's admonition that "[f]orty-five [seconds] after I hang up you can call your home and see if you can get through." Trial Transcript at 50.

4. The grand jury on January 8, 1973, indicted Mueller and appellant on charges of violating the Hobbs Act and the bank theft statute. Mueller, however, was never tried, having been slain in Clayton, Missouri, on May 28, 1973. Trial commenced on July 9, 1973.

jeopardy and cruel and unusual punishment clauses and the specialty and multiplicity doctrines. Although two circuits, including this one, have applied the Hobbs Act to the extortion of bank assets, Stout v. United States, 508 F.2d 951 (6th Cir. 1975), United States v. Grieser, 502 F.2d 1295 (9th Cir. 1974), the applicability of the Hobbs Act seems to have been assumed rather than examined. *Stout,* in fact, concerned the voluntariness of a guilty plea and involved the applicability of the Hobbs Act only tangentially. Moreover, while courts have broadly construed the Hobbs Act, see, e. g., United States v. Gill, 490 F.2d 233 (7th Cir. 1973), cert. denied, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974) (police extortion from tavern in exchange for "overlooking" certain liquor violations), United States v. Mitchell, 463 F.2d 187, 193 (8th Cir. 1972), cert. denied, 410 U.S. 969, 93 S.Ct. 1449, 35 L.Ed.2d 705 (1973) (militant civil rights activity), United States v. Pranno, 385 F.2d 387, 389 (7th Cir. 1967), cert. denied, 390 U.S. 944, 972, 88 S.Ct. 1028, 19 L.Ed.2d 1132 (1968) (politicians' threat to withhold building permit unless $20,000 paid), we remain unpersuaded that the Hobbs Act was designed to reach, or reaches, the extortion of bank assets, having been intended to curb labor racketeering. See United States v. Franks, 511 F.2d 25 (6th Cir. 1975). However, we need not here consider the applicability of the Hobbs Act, since we conclude that the Hobbs Act conviction was improper because the bank theft statute, being "a comprehensive scheme for prosecuting and punishing persons who rob federally-insured banks," was intended to exclusively proscribe conduct within its "coverage." United States v. Canty, 152 U.S.App.D.C. 103, 469 F.2d 114, 127–129 (D.C.Cir. 1972).

■ United States v. Marx, 485 F.2d 1179 (10th Cir. 1973), cert. denied, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974), which involved strikingly similar extortion of bank assets, established that the bank theft statute proscribes such conduct. We recognize that this (*Stout,*

*supra*) and the Ninth (*Grieser, supra*) circuits have applied the Hobbs Act to the extortion, or attempted extortion, of bank assets, but no case has yet addressed the exclusivity of the bank theft statute in reference to the Hobbs Act. Stout and Grieser were convicted *only* of violating the Hobbs Act.

Like the *Canty* court, however, we are of the view that, in appropriate circumstances and under additional facts, a bank robber can be convicted of and sentenced, even consecutively, for a section 2113 ("Bank Robbery and incidental crimes") and another violation. For example, had appellant been a convicted felon and used certain firearms, 18 U.S. C.App. § 1202(a) (1970), in obtaining the bank's monies, he could be convicted of and sentenced, even consecutively, for such firearms and bank theft violations. In the present situation, however, the Hobbs Act conviction cannot stand because precisely the same facts which permit judicial notice of the interstate nature of a national bank's operations, without addition or modification, provide the basis for it and a conviction under section 2113.

■ Although the Hobbs Act conviction cannot stand, we uphold the bank theft conviction because we find no prejudice in appellant's being tried on both charges rather than being tried on the bank theft charge alone. Joining the Hobbs Act charge resulted in the admission of no prejudicial evidence that would have been inadmissible at a trial on charges of violating only the bank theft statute. *Canty, supra,* 469 F.2d at 129. See Prince v. United States, 352 U.S. 322, 329, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); United States v. Faleafine, 492 F.2d 18, 26 (9th Cir. 1974); *Marx, supra,* 485 F.2d at 1186. See also Rutkowski v. United States, 149 F.2d 481, 483 (6th Cir. 1945).

## THE SEARCH AND SEIZURE ISSUES

Second, appellant urges that the warrantless seizure and multiple searches of the automobile violated the Fourth Amendment, requiring the suppression

as evidence of the items uncovered in the searches. Even if the seizure and searches were otherwise proper, appellant claims that the admission of his spiral notebook and its contents violated his Fourth Amendment right of privacy with regard to personal papers and his Fifth Amendment privilege against self-incrimination.

Even assuming that appellant has standing to assert improper searches and seizure,[5] the warrantless seizure and searches were "reasonable" under the circumstances and, thus, lawful. Similarly, we find no error in admitting the spiral notebook.

■ This court[6] and the Supreme Court[7] have often dealt with the lawfulness of warrantless searches and seizures of automobiles. Though "reasonable" warrantless searches are rare, Cash v. Williams, 455 F.2d 1227, 1231–1232 (6th Cir. 1972), probable cause that an automobile contains evidence or fruits of a crime plus "exigent circumstances" invariably justify the warrantlessness of a search or seizure of the automobile. Here, because direct evidence established that the automobile was used in obtaining the bag from Sledge's automobile and because it was improperly registered at the motel, appellant neither argues nor could argue that there was no probable cause. Appellant does argue, however, that no exigent circumstances excused the government's failure to obtain a warrant. Admittedly, probable cause alone can never justify a warrantless search or seizure, United States v. Lewis, 504 F.2d 92, 100 (6th Cir. 1974). Like United States v. Shye, 473 F.2d 1061 (6th Cir. 1973), however, exigent circumstances existed in that the searches and seizure occurred within hours of the taking of the bag and in that the thieves were still at large and the stolen property was unrecovered. The cases appellant has cited and the cases in this circuit invalidating warrantless automobile searches because exigent circumstances were absent have involved a search or seizure either several days after the crime, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (more than one month), Lewis v. Cardwell, 476 F.2d 467 (6th Cir. 1973), rev'd on other grounds, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (more than two months), Cook v. Johnson, 459

5. Though the government has claimed that appellant, being neither the owner of the automobile nor present during the search, lacks standing, recent case law portends finding such standing in appellant. In Cash v. Williams, 455 F.2d 1227, 1229 (6th Cir. 1972), this court flatly said that "[i]n order to establish standing to contest a search, a defendant must show that he owned or possessed the seized property *or* that he had a possessory interest in or was present at the premises searched" (emphasis in originals). Moreover, in United States v. Hearn, 496 F.2d 236, 240–241 (6th Cir.), cert. denied, 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974), for example, in finding no standing, this court pointed out that the defendant asserting the unlawful search claimed no interest in the seized property. Similarly, Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), aff'g 452 F.2d 868 (6th Cir. 1971), though finding no standing, four times noted that the party asserting the unlawful search claimed "no proprietary or possessory interest . . . [in] the goods seized . . ., nor was any evidence of such an interest presented." 411 U.S. at 225–226, 228, 229–230, 93 S.Ct. at 1567. Because we assume standing, it is unnecessary to determine whether appellant, in fact, sufficiently asserted a "proprietary or possessory interest . . . in the goods seized."

6. E. g., United States v. Upthegrove, 504 F.2d 682 (6th Cir. 1974); United States v. Lewis, 504 F.2d 92 (6th Cir. 1974); United States v. Kemper, 503 F.2d 327 (6th Cir. 1974); United States v. Isham, 501 F.2d 989 (6th Cir. 1974); United States v. Bush, 500 F.2d 19 (6th Cir. 1974); United States v. Shye, 473 F.2d 1061 (6th Cir. 1973); Cook v. Johnson, 459 F.2d 473 (6th Cir. 1972); Cash v. Williams, 455 F.2d 1227 (6th Cir. 1972).

7. E. g., Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), rev'g 476 F.2d 467 (6th Cir. 1973); Coolidge v. New Hampshire, 403 U.S. 443, 458–464, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

F.2d 473 (6th Cir. 1972) (four days), where the suspected culprit has been arrested and jailed, Kaufman v. United States, 453 F.2d 798, 802–803 (8th Cir. 1971), where the stolen "property" has been recovered, *Cook, supra,* where the police could properly retain custody of the automobile on another basis pending issuance of a warrant, *Cash, supra,* 455 F.2d at 1231, or where the facts underlying the search and seizure were available to the law officers prior to beginning their investigative work, see United States v. Fullmer, 457 F.2d 447 (7th Cir. 1972). But see Lewis v. Cardwell, 417 U.S. 583, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325 (1974).

■ We again hold, as has the Supreme Court, that a warrant to authorize the further search of the automobile at the impound lot was not required. *Cardwell, supra,* 417 U.S. at 592–596, 94 S.Ct. at 2470–2472, 41 L.Ed.2d at 336–338; Chambers v. Maroney, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Isham, 501 F.2d 989, 991 (6th Cir. 1974).

Appellant's further contention that, even if the warrantless searches and seizure of the automobile were proper, the admission of his spiral notebook was nonetheless improper, stems from Supreme Court dictum. In Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886), which involved an order to produce evidence, the Court in dictum went on to confess its inability "to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." Accord, Gouled v. United States, 255 U.S. 298, 306, 41 S.Ct. 261, 65 L.Ed. 647 (1921). More recently, although Warden v. Hayden, 387 U.S. 294, 303, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967), abolished the "mere evidence" rule, the Court noted that "[t]his case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure." We, however, find

that admitting the spiral notebook, on these facts, violated neither the Fourth nor Fifth Amendments.

■ Admitting properly seized "personal papers" cannot violate the Fifth Amendment privilege against self-incrimination. Unlike an order which "compels" production of evidence, *Boyd, supra,* 116 U.S. at 618, 6 S.Ct. 524, 29 L.Ed. 746 the owner of a notebook uncovered in a search in his absence is under no compulsion. See United States v. Blank, 459 F.2d 383, 385 (6th Cir. 1972), rev'g 330 F.Supp. 783 (N.D. Ohio 1971); United States v. Murray, 492 F.2d 178, 191 (9th Cir. 1973); United States v. Scharfman, 448 F.2d 1352, 1355 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972). But see Hill v. Philpott, 445 F.2d 144 (7th Cir. 1971). Being unaware of the search, he has no choice. Comment, The Search and Seizure of Private Papers: Fourth and Fifth Amendment Considerations, 6 Loyola (Cal.) L.Rev. 274, 290 n. 93 (1973). Couch v. United States, 409 U.S. 322, 327–336, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), established that mandated cooperation, rather than the "privacy" of the owned papers, is the *sine qua non* of the privilege against self-incrimination. See Comment, The Protection of Privacy by the Privilege Against Self-Incrimination: a Doctrine Laid to Rest?, 59 Iowa L.Rev. 1336 (1974). Similarly, though "testimonial" evidence was seized in United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the Court sustained the admission of such uncompelled evidence without feeling even the need to discuss the privilege against self-incrimination.

■ Though the overall search and seizure is proper and though there is no compelled cooperation, the search and seizure of the papers must also be "reasonable." As the Second Circuit so aptly said,

"The reason why we shrink from allowing a personal diary to be the object of a search is that the entire diary must be read to discover whether there are incriminating entries; most

of us would feel rather differently with respect to a 'diary' whose cover page bore the title 'Robberies I Have Performed.' Similarly the abhorrence generally felt with respect to 'rummaging' through the contents of a desk to find an incriminating letter would not exist in the same measure if the letter were lying in plain view." United States v. Bennett, 409 F.2d 888, 897 (2d Cir.), cert. denied sub. nom., Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969), Thomas v. United States, 402 U.S. 984, 91 S.Ct. 1670, 29 L.Ed.2d 149 (1971).

The "search" of the spiral notebook for its communicative value and for fingerprints, see United States v. Hill, 454 F.2d 282 (9th Cir. 1972), under the present circumstances, was hardly unreasonable in that, as in *Bennett,* there was no extensive "rummaging." Though appellate counsel has characterized the notebook as appellant's "private diary" (Appellant's Reply Brief at 22), the "diary" consisted of just one page, the first page, in fact, of the notebook. United States v. Gargotto, 510 F.2d 409 (6th Cir. 1974), sustained the reasonableness of a search involving much greater "rummaging." Cf. *Philpott, supra* (more than thirty cartons of records seized); United States v. Zive, 299 F.Supp. 1273 (S.D.N.Y.1973) (at least seven desk or file drawers).

## THE INSTRUCTIONS TO THE JURY

■ Third, appellant claims that the district judge erred in charging the jury that it could convict appellant if the bank's money was "taken *or* carried away." Assuming that the instruction were error and even "plain error," Fed. R.Crim.P. 52(b), in light of appellant's

failure to object to it,[8] it certainly was harmless. Neither appellant nor the evidence suggests the possibility that money was taken, but not carried away, or carried away, but not taken. *Marx, supra,* 485 F.2d at 1185; McDonnell v. United States, 472 F.2d 1153, 1156–57 (8th Cir.), cert. denied, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402 (1973); United States v. Jacquillon, 469 F.2d 380, 386 (5th Cir. 1972), cert. denied, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973).

## THE SUFFICIENCY OF THE EVIDENCE

■ Fourth, appellant claims insufficient evidence was received to establish that the money was actually placed in the bag, that even if money were so placed that it was the bank's money, and that he was involved in the taking of the money. However, as hereinabove stated, branch manager Sledge testified that he "went to [his] head teller, Mrs. McMillan, and told her to fix me up fifty thousand dollars in a cloth bag," and that she "immediately, on my instructions, went to the vault and fixed up the money." Trial Transcript 82. Moreover, his secretary testified that "we" went to the vault "to get the money." Trial Transcript at 20–21. Although Mrs. McMillan never testified,[9] viewing the evidence and reasonable inferences therefrom in the light most favorable to the government, United States v. Hearn, 496 F.2d 236, 237 (6th Cir.), cert. denied, 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974), we find sufficient evidence that money belonging to the bank was placed in the bag. We consider the evidence that appellant was involved in obtaining the money to be overwhelming.

8. Though defense counsel objected to two other aspects of the jury instructions, he failed to object to the "take *or* carry away" aspect. Objections to the Charge 3–5.

9. On oral argument in this court, government counsel explained that, although Mrs. McMillan had been scheduled to testify, she was never called because it was "thought unneces-

sary." The trial transcript reflects the government's aim at facilitating the advance of the trial.

"[THE COURT: Y]ou made an earlier estimate of seventy witnesses.

"[THE PROSECUTOR]: I have been paring on it, if the Court please, and have pared it down as best I can to approximately forty-five at this time." Trial Transcript at 67.

The conviction of violating the bank theft statute is affirmed; the conviction of violating the Hobbs Act is vacated.