**UNITED STATES of America, Appellee,**

v.

**Edward Frank SNELL and Erwin William Schmidt, Appellants.**

**Nos. 76–1985, 76–1907.**

United States Court of Appeals, Ninth Circuit.

March 21, 1977.

Rehearing and Rehearing En Banc Denied June 7, 1977.

Douglas H. Westbrook, Crim. Div., Dept. of Justice, Washington, D. C., for appellee.

Barry J. Portman, Asst. Federal Public Defender, San Francisco, Cal., for appellant Schmidt.

Paul H. Alvarado, San Francisco, Cal., for appellant Snell.

Before DUNIWAY and ELY, Circuit Judges, and BELLONI,* District Judge.

ELY, Circuit Judge:

After a jury trial, defendants Schmidt and Snell were convicted of attempting to obstruct commerce by extortion, in violation of 18 U.S.C. § 1951 ("Hobbs Act" or "Act"),[1] and of conspiracy to rob a federally

* Honorable Robert C. Belloni, United States District Judge, District of Oregon, sitting by designation.

1. 18 U.S.C. § 1951, in pertinent part, provides:
"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or at-

insured bank, in violation of 18 U.S.C. §§ 371[2] and 2113(a).[3] The District Court sentenced Schmidt to five years of confinement for each of the two offenses, the sentences to run concurrently. Snell received a twenty-year term of confinement on the attempted extortion conviction and a five-year term for the conspiracy offense, these sentences also to run concurrently. We reverse the convictions for attempted extortion under the Hobbs Act and affirm the convictions for conspiracy to commit bank robbery.

tempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both. * * * "

2. 18 U.S.C. § 371 provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

3. 18 U.S.C. § 2113 provides:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, credit union, or a savings and loan association, in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker.

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

(e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

(f) As used in this section the term 'bank' means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation.

(g) As used in this section the term 'savings and loan association' means any Federal savings and loan association and any 'insured institution' as defined in section 401 of the National Housing Act, as amended, and any 'Federal credit union' as defined in section 2 of the Federal Credit Union Act.

(h) As used in this section the term 'credit union' means any Federal credit union and any State-chartered credit union the accounts of which are insured by the Administrator of the National Credit Union Administration."

An unindicted co-conspirator named Prickett provided most of the incriminating evidence against the appellants. Prickett testified that Schmidt and Snell devised two contingency plans to extort $150,000 from the federally insured Southland Center Branch of the Bank of America in Hayward, California, on December 11, 1975. Pursuant to the first plan, the conspirators contemplated holding the bank manager and his wife, Mr. and Mrs. Aimes, as overnight hostages in their own home. The following day, Mr. Aimes was to be taken to the bank in order to secure the ransom money. Alternatively, the defendants intended to kidnap Mrs. Aimes, photograph her, and then confront her husband at the bank with their ransom demand. In either event, Schmidt and Snell agreed to murder Mr. Aimes and thereby foreclose the possibility of future identification by him. To this same end, Mrs. Aimes was to be sprayed with mace and thereafter taken into custody without being able to observe her assailants.

Prickett and Schmidt first surveyed the Aimes' residence on December 8, 1975. During the early morning of the next day, December 9, Prickett and Schmidt bought gloves in a drug store located across the street from the shopping center in which the bank is situated. A short time later, Schmidt and Prickett rendezvoused with Snell in the shopping center parking lot. Here, Schmidt and Snell pointed out to Prickett both Aimes individually and the latter's automobile as he arrived for work. That evening, Prickett and Schmidt observed Aimes arrive at his home after leaving his place of work.

On the evening of the following day, December 10, 1975, the conspirators prepared to execute the first of the plans that we have above described. The attempt was aborted, however, due to the presence of a highway patrolman in the immediate vicinity of the Aimes' residence.

Finally, on December 11, 1975, an attempt was made to implement the second plan. Schmidt, Snell, and Prickett drove in two cars to the Aimes' residence. Schmidt and Snell approached the home with the intent of kidnapping Mrs. Aimes. To their consternation, however, Mrs. Aimes answered the door with a huge dog—a great Dane—at her side. Snell introduced himself and Schmidt as police officers, flashed a fictitious police identification, and requested to speak with Mr. Aimes. Mrs. Aimes responded that her husband would not be home until six o'clock that evening. Following a further brief exchange of conversation, Schmidt leaned forward as if to pet the dog or perhaps to touch Mrs. Aimes, whereupon the dog lunged forward toward Schmidt and snarled. Schmidt stepped immediately back, and, shortly thereafter, Snell stated to Mrs. Aimes that they would return later. Schmidt and Snell then departed, their criminal scheme finally thwarted and terminated.

Schmidt and Snell contend, among numerous assignments of error, that the record does not contain sufficient evidence to sustain the convictions for *attempted* extortion. We need not and do not resolve whether or not the defendants' conduct can be characterized, legally, as an "attempt." Assuming *arguendo* the sufficiency of the evidence in support of such a conclusion, the convictions under the Hobbs Act are, nonetheless, fatally defective in light of our holding today that the federal bank theft statute, 18 U.S.C. § 2113, provides *exclusive* federal remedies for offensive conduct fully within its coverage.

18 U.S.C. § 2113 subdivides the offense of bank robbery into a series of continuing steps ranging from attempted entry and entry with intent to rob; to robbery and attempted robbery by force, violence, or intimidation; to robbery utilizing a dangerous weapon; to robbery resulting in death or kidnapping. The statute provides for penalties in increasing increments corresponding to the aggravated nature of the theft.[4]

The appellants urge, and we agree, that 18 U.S.C. § 2113 constitutes a comprehensive bank theft statute which provides the exclusive remedy for conduct fully within

---

4. *See* note 3 *supra.*

its coverage. Our conclusion accords with recent decisions of two other Courts of Appeals, that of the Sixth Circuit and that of the District of Columbia Circuit. *See United States v. Beck,* 511 F.2d 997 (6th Cir. 1975); *United States v. Canty,* 152 U.S.App. D.C. 103, 469 F.2d 114 (1972).

In *United States v. Canty, supra,* the defendant was chargeable under 18 U.S.C. § 2113(d) for assault with a dangerous weapon in connection with the robbery of a federally insured bank. Rather than prosecuting the defendant solely under the bank robbery statute, the Government charged him with unarmed bank robbery in violation of 18 U.S.C. § 2113(a), and with assault with a dangerous weapon in violation of a catch-all provision of the District of Columbia Code. By venturing outside of the federal bank robbery statute, the prosecution was able to circumvent the carefully structured hierarchy of penalties therein set forth and, ultimately, to obtain a sentence longer than the maximum sentence authorized under the highest tier of the general federal statute. Reasoning from *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), wherein the Supreme Court prohibited the pyramiding of sentences under the federal bank robbery statute, the Court of Appeals vacated the conviction for assault in violation of the local criminal code.

In *United States v. Beck, supra,* the Sixth Circuit directly addressed the exclusivity of the federal bank robbery statute in reference to the Hobbs Act. The defendant, according to the court, was chargeable with bank robbery under 18 U.S.C. § 2113(a). 511 F.2d at 1000; *see United States v. Marx,* 485 F.2d 1179 (10th Cir. 1973), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974). The Government, however, charged the defendant with bank lar-

ceny under 18 U.S.C. § 2113(b) and with extortion under the Hobbs Act. As in *Canty,* the prosecution was thereby permitted to obtain a sentence longer than the maximum sentence allowed under the highest applicable tier of the federal bank robbery statute. The court vacated the conviction under the Hobbs Act, agreeing with the *Canty* court that the bank robbery statute, being a comprehensive scheme, was intended exclusively to proscribe conduct fully within its coverage. 511 F.2d at 1000.

Agreeing, as we do, that the bank robbery statute provides the exclusive remedy for conduct within its coverage, we are compelled to reverse Schmidt and Snell's convictions for attempted extortion. The defendants were chargeable under 18 U.S.C. § 2113(a) with attempted bank robbery by force, violence, or intimidation. *See United States v. Marx, supra.* Precisely why the Government, which indicted Schmidt and Snell for conspiracy to commit bank robbery, elected to charge them further with attempted extortion rather than with attempted bank robbery, is not apparent. We can only note that, by venturing away from the bank robbery statute, the Government subjected Schmidt and Snell potentially to combined fines and terms of confinement in excess of that provided in 18 U.S.C. § 2113(a).[5] In any event, since Schmidt and Snell were chargeable under the bank robbery statute, they were not legally chargeable under the Hobbs Act or any other federal criminal statute ostensibly reaching conduct fully within the reach of the bank robbery statute.[6] While we can speculate that Schmidt and Snell would likely have been convicted of attempted bank robbery under 18 U.S.C. § 2113(a), we obviously cannot convict them of an offense for which they were not charged or tried.[7]

---

**5.** 18 U.S.C. § 2113(a) specifies a maximum punishment of 20 years of confinement and a $5,000 fine, while the Hobbs Act specifies a maximum punishment of 20 years of confinement and a $10,000 fine. *See* notes 1 and 3 *supra.*

**6.** The prosecution, of course, is not foreclosed from venturing outside of 18 U.S.C. § 2113 in order to charge offenses beyond the coverage of the statute. *See, e. g., United States v.*

*Canty, supra,* 469 F.2d at 129. We have no occasion to designate what those offenses might be. In respect to bank robbery, we are unpersuaded that the Hobbs Act is designed to serve interests that the federal bank robbery scheme does not already purport to serve.

**7.** The author would vacate the Hobbs Act convictions for another reason as well as the exclusivity of 18 U.S.C. § 2113, *i. e.* the compulsion of our recent holding in *United States v. Cul-*

There was ample evidence to support the convictions for conspiracy. We have carefully evaluated all other contentions here advanced by the appellants and find them to be without merit. The convictions for conspiracy to commit bank robbery are therefore affirmed. The judgments of conviction for attempted extortion are vacated.

REVERSED in part; AFFIRMED in part.

bert, 548 F.2d 1355 (9 Cir., 1977). Judges Duniway and Belloni, having doubts about the soundness of this court's recent decision in *Culbert, supra,* find it unnecessary to consider whether to apply the *Culbert* decision in this

case because they agree that the bank robbery statute makes the Hobbs Act inapplicable to the convictions of Snell and Schmidt.