**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1543

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| George Harold Damm, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 21, 1997

Filed:  January 8, 1998

_____

Before FAGG, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

George Harold Damm appeals his conviction for obstructing and affecting commerce by robbery, in violation of 18 U.S.C. § 1951 (Hobbs Act), conspiracy to interfere with commerce, in violation of 18 U.S.C. § 371, bank larceny, in violation of 18 U.S.C. § 2113(b), and using or carrying a firearm during and in relation to a crime of violence, in violation of  18 U.S.C. § 924(c)(1).  We affirm.

# I.

Damm's conviction stems from an April 1996 robbery of an American Security Corporation armored truck in Maple Grove, Minnesota. Damm, the driver of the truck and an employee of American Security, assisted Frederick Pruitt, Timothy Brockhouse, Leon Garling, Shane Williams, and Marco Arizpe in stealing almost $1.5 million in cash, checks, and food stamps, as well as a handgun. The robbery proceeds included more than $260,000 in money and property belonging to commercial establishments destined for deposit in banks.

Damm, an active participant in carrying out the plan, also played an integral role in planning the robbery by providing crucial information about his co-driver, Mike Vodinelich, details about the armored vehicle's route, and information about American Security's customers. On the day of the robbery, Arizpe and Brockhouse approached the truck as Vodinelich emerged from Champp's Restaurant in Maple Grove. Damm, who was driving the truck, gave the go-ahead signal to Arizpe, who pulled out a sawed-off shotgun and ordered Vodinelich not to draw his weapon. Brockhouse then grabbed Vodinelich's Glock 9 mm. handgun while Arizpe had Damm open the rear door of the truck.

After threatening to kill Vodinelich if he failed to cooperate, the robbers forced him into the back of the truck and bound his hands and legs with tape. Brockhouse, carrying Vodinelich's Glock and an air pistol, got into the cab of the truck with Damm and took his revolver, while Arizpe remained in the back of the vehicle with Vodinelich. Damm then drove the truck, which was followed by a van driven by Garling, to a remote dirt road, where the robbers transferred the money from the truck to the van. They then put Damm into the back of the armored truck and fled the scene in the van.

Except for Arizpe, all of Damm's co-perpetrators were apprehended, entered plea agreements, and testified against Damm at trial. Damm was convicted on all counts. The district court[1] sentenced Damm to concurrent terms of 135 months each for the Hobbs Act violations, a concurrent 120-month term for the bank larceny charge, and a consecutive 60-month term on the section 924(c)(1) violation.

## II.

Damm argues that because his conduct falls solely under the Federal Bank Robbery Act (FBRA),[2] he cannot be punished under either the Hobbs Act[3] or the

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[2]Title 18, United States Code, Section 2113(b) provides in pertinent part:

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned for not more than ten years, or both . . . .

[3]Title 18, United States Code, Section 1951 provides in pertinent part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section –
        (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . . .

-3-

firearms provisions of section 924(c). He contends that the FBRA constitutes a comprehensive statutory scheme that provides an exclusive remedy for conduct falling entirely within its coverage and that the Hobbs Act may not be invoked to separate what was in fact a single bank robbery.

In Simpson v. United States, 435 U.S. 6, 13-16 (1978), the Supreme Court held that a defendant may not be sentenced under both the organic firearm enhancement provisions of the FBRA and 18 U.S.C. § 924(c), a general firearm enhancement statute. Damm urges that similar logic applies to his Hobbs Act sentences.[4] The FBRA, being a "'comprehensive scheme for prosecuting and punishing persons who rob federally-insured banks,' was intended to exclusively proscribe conduct within its 'coverage.'" United States v. Beck, 511 F.2d 997, 1000 (6th Cir. 1975) (quoting United States v. Canty, 469 F.2d 114, 127-29 (D.C. Cir. 1972)).

In United States v. Maldonado-Rivera, the Second Circuit rejected the argument that the imposition of punishment under both the FBRA and the Hobbs Act was improper. 992 F.2d 934, 983 (2d Cir. 1990) Conversely, the Sixth Circuit has held that a defendant convicted of bank robbery cannot be convicted of a Hobbs Act violation if both convictions were based on "precisely the same facts." Beck, 511 F.2d at 1000. In United States v. Golay, 560 F.2d 866, 869 (8th Cir. 1977), we held that although a defendant in a bank extortion scheme could be charged and convicted under both the bank robbery statutes and the Hobbs Act, a sentence under both of the Acts violated double jeopardy principles.

---

[4]Damm cites our decision in Embrey v. Hershberger, 106 F.3d 805 (8th Cir. 1997), in support of his argument. That decision has since been vacated, however, and we have reconsidered the Embrey case en banc. See Embrey v. Hershberger, No. 95-2906, 1997 WL 773359 at *1 (8th Cir. Dec. 17, 1997). In our en banc decision we resolved the Embrey case on habeas corpus procedural grounds without reaching the FBRA issues that Damm raises here. Id.

Although <u>Golay</u> and <u>Beck</u> arguably create a bar to punishing a bank robbery under both the Hobbs Act and the FBRA, we need not consider their potential impact in this case, for Damm's theft of money and property belonging to commercial establishments other than banks vitiates his argument. Section 2113(b) applies to the theft of property "belonging to, or in the care, custody, control, management, or possession of any bank." 18 U.S.C. § 2113(b).

Damm contends that the money being transferred from the commercial establishments to the banks was in the care, custody, and control of the banks, citing <u>United States v. Marzano</u>, 537 F.2d 257, 272 n.8 (7th Cir. 1976). <u>Marzano</u>, however, involved the theft of bank funds from the vault of an agent courier and involved no non-bank victims, <u>see</u> <u>id.</u> at 261, 275, whereas in the present case the record reflects that Champp's, a victim of the robbery, had independently contracted with American Security to handle its needs for courier services. In <u>Lubin v. United States</u>, 313 F.2d 419 (9th Cir. 1963), a case with facts strikingly similar to this one, the Ninth Circuit held that money and checks being carried toward a bank by a contract armored truck was not yet property belonging a bank; nor was other money signed over to the courier service on a promissory note. <u>See</u> <u>id.</u> at 421. <u>See also</u> <u>United States v. Van</u>, 814 F.2d 1004, 1008 (5th Cir. 1987) (money withdrawn by a depositor and thereafter stolen is not bank property).

Although the funds in the American Security truck being transferred by banks *to* businesses are properly considered bank property for FBRA purposes, <u>see, e.g.</u>, <u>United States v. Jakalski</u>, 237 F.2d 503, 506 (7th Cir. 1956); <u>White v. United States</u>, 85 F.2d 268, 270 (D.C. Cir. 1936), funds destined for banks *from* businesses were not under the care, control or custody of a bank. In light of the non-bank character of some of the property stolen from the armored truck, then, we conclude that Damm was properly charged, convicted, and sentenced under both the Hobbs Act and the FBRA.

## III.

Damm also challenges his firearm conviction under 18 U.S.C. § 924(c).

A conviction under section 924(c) requires proof of two elements: (1) that the defendant used or carried a firearm; and (2) that the use or carrying was during and in relation to a crime of violence. See Smith v. United States, 508 U.S. 223, 227-28 (1993). Because Damm's Hobbs Act convictions are being affirmed, we need consider only Damm's contention that there is insufficient evidence to establish that he carried the Glock handgun in relation to the robbery.

It is undisputable that the weapon was carried "during" the robbery. Brockhouse took Vodinelich's gun and kept it on his person during the robbery and escape. Second, the reasoning in Smith and our decision in United States v. Pate, 932 F.2d 736 (8th Cir. 1991), support a finding that the weapon in these circumstances was carried in relation to the crime. "The phrase 'in relation to' is expansive . . . [and] clarifies that the firearm must have some purpose or effect with respect to the . . . crime." Smith, 508 U.S. at 237-38. Moreover, "where the evidence adequately supports that the weapon was used or carried in any way that effectuated the felony--whatever the felony--a conviction may be had." Pate, 932 F.2d at 738. The government produced evidence both that Vodinelich's weapon was seized from him, rendering him unable to resist, and that Brockhouse subsequently carried the weapon throughout the robbery and escape. Thus, the jury was presented with ample evidence that Vodinelich's weapon was carried in a manner that effectuated the robbery. See id. at 738 (presence of shotgun in a bank robbery getaway car sufficient to support a conviction under section 924(c)).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.