[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/29/99
THOMAS  K. KAHN
CLERK

_____

No. 98-5393
Non-Argument Calendar

_____

D. C. Docket No. 97-CR-941-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL MAXWELL KING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 29, 1999)**

Before BIRCH and BARKETT, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

A federal grand jury returned a single-count indictment charging Paul Maxwell King ("King") with stealing money insured by the Federal Deposit Insurance Corporation in violation of 18 U.S.C. § 2113(b). After being found guilty at a jury trial, King was sentenced to a 12-month term of imprisonment and ordered to pay restitution in the amount of $9,334.66 to Loomis Fargo (an armored transport company). On appeal, King argues the money being transported by Loomis Fargo was not in the care, custody or control of a federally insured bank when stolen, and therefore, the government failed to prove an essential element of 18 U.S.C. § 2113(b). We disagree with King's contention and affirm his conviction. King's second assignment of error is the district court's sentence ordering him to pay restitution to Loomis Fargo. Because King was neither charged with

nor convicted of the crime for which he was ordered to pay restitution, we vacate that portion of the sentence.

## FACTS

On December 12, 1997, a Loomis Fargo & Company armored transport vehicle picked up $8,764.00 from the Metro-Dade Rickenbacker Causeway toll authorities to be delivered for deposit in the First Union National Bank, and $183.000.00 from the International Bank of Miami to be delivered to the Federal Reserve Bank of Miami. Occupying the vehicle for Loomis Fargo were the driver, James Williams, and the messenger, Jeremiah Campbell.

Campbell and Williams made an unscheduled stop at the Miami Lakes Technical School to check on an afternoon pickup. At the school, Williams and Campbell went to the restroom leaving the vehicle unattended. When they returned from the bathroom, the truck had been moved to the another area of the parking lock and the money was gone. Upon this discovery, Campbell and Williams called the Metro-Dade police to investigate.

At the scene of the crime police officers interviewed Anthony Shiggs, an eyewitness, who stated that he saw a man exit the armored vehicle carrying two bags and then flee the scene in a red Honda. Shiggs, suspicious of the scenario, followed the Honda as it left the parking lot but lost it thereafter in traffic. He was, however, able to remember the tag number and he provided such to the police. A record check revealed the Honda was registered to King.

Law enforcement officials proceeded to King's address and found the red Honda Shiggs described in the parking lot of the residence. When King exited the house he was arrested. Subsequently, the police searched King's home and found $183,000 in the master bedroom. The additional $8,764 belonging to the Rickenbacker Toll Plaza was not recovered, however, a shopping bag on King's person contained money seals and bag tabs matching those used by the Rickenbacker

2

Toll Plaza. The police were also able to recover additional evidence that linked King to Jeremiah Campbell, the Loomis Fargo messenger[1].

A federal grand jury returned an indictment charging King with stealing money from a bank insured by the FDIC in violation of 18 U.S.C. § 2113(b). The case proceeded to trial and the jury found King guilty of the charged offense. The district judge sentenced King to a 12 month term of imprisonment and ordered King to pay restitution to Loomis Fargo in the amount of $9,334.66. This appeal followed.

**DISCUSSION**

To sustain a conviction under 18 U.S.C § 2113(b) the government is required to prove three things: (1)the defendant carried away in excess of $1,000; (2)the money was belonging to or in the care, custody, control, management or possession of the bank; and (3) the defendant's intent was to steal the money. See United States v. Cornillie, 92 F.3d 1108, 1109 (11th Cir. 1996). King's principal contention is that the second element was not satisfied and therefore his conviction must be reversed. The gist of his argument is that, because the money was stolen from an armored vehicle, it was in the care, custody or possession of Loomis Fargo, not the bank. We find this argument to be unpersuasive and inconsistent with the spirit of 18 U.S.C. § 2113.

The evidence at trial showed that the International Bank of Miami sent money to and received money from the Federal Reserve, and that the bank contracted with Loomis Fargo to provide for the transportation of this money. Loomis Fargo was responsible for any loss of cash from the moment they picked it up until they dropped it off. The bank, however, was never without legal title to the money. The contract simply provided Loomis Fargo with custody of the money for

---

[1]King was found carrying a set of key to a Loomis Fargo armored vehicle, although it was not the same armored vehicle that had been burglarized. This set of keys was directly linked to Jeremiah Campbell. The police also found a deposit slip for Jeremiah Campbell in King's Honda.

the limited purpose of transferring the funds to the Federal Reserve.[2] "It is, of course, plain that the money, while in the care, custody, and control of the [armored transport] was, in contemplation of the law, in the custody, care and control of the bank." White v. United State, 85 F.2d 268, 269 (D.C. Cir. 1936); See also, United States v. Damm, 133 F.3d 636, 638 (8th Cir. 1998)("funds in the American Security truck being transferred by banks to businesses are properly considered bank property for FBRA purposes ...")(internal citations omitted); United States v. Mafnas, 701 F.2d 83, 85 (9th Cir. 1983)(money considered bank property notwithstanding the fact the money was in possession of armored truck when stolen); United States v. Jakalski, 237 F.2d 503, 505-506 (7th Cir. 1956)(argument that money stolen from armored car service was not bank property considered to be without merit).[3] Accordingly, we find no error in the trial judge's instruction that money stolen from an armored car is properly considered to be money "in the care, custody, control, management or possession of any bank" within the meaning of 18 U.S.C. § 21113(b).

The second issue on appeal is whether the district judge's order of restitution -for the theft of the money belonging to the toll plaza- was warranted. King was never charged with or convicted of the theft of that money. He argues that he cannot be ordered to pay restitution to a victim for an offense for which he was not charged with or convicted of. The government concedes this was error. Accordingly, we vacate the restitution portion of King's sentence.

---

[2]King also argues that the contract did not merely provide Loomis Fargo with custody, but created a bailment situation. We need not address that question as it has no effect on whether the money, in the contemplation of 18 U.S.C. § 2113(b), was belonging to or in the care, custody, control or management of the bank when stolen.

[3]King relies on Lubin v. United States, 313 F.2d 419 (9th Cir. 1963), to support his argument. This reliance, however, is misplaced. In Lubin, the armored vehicle picked up cash from the bank to deliver it to various business. The purpose of the pick up was to cash employees' payroll checks, and allow the armored truck company to derive a profit from the check-cashing by discounting the checks it cashed. Thus, when the money was returned to the bank in the afternoon the deposit exceeded the amount withdrawn in the morning. The form of the transaction was such that a promissory note was delivered in exchange for the money, thereby allowing legal title to pass from the bank to the armored truck company. In this case, legal title never passed to Loomis Fargo.

AFFIRMED in part, VACATED in part.