**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lendale HEARN and Murray Taylor,**
**Defendants-Appellants.**

**Nos. 73–1603, 73–1604.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1973.

Decided May 7, 1974.

Edward Witt Chandler, McKenzie, Tenn. (Court Appointed), for Lendale Hearn.

Allen J. Strawbridge, Jr., Martin, Tenn., for Murray Taylor.

Glen Reid, Jr., Asst. U. S. Atty., for plaintiff-appellee; Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before CELEBREZZE, Circuit Judge, McALLISTER, Senior Circuit Judge, and WILSON, District Judge.*

FRANK W. WILSON, District Judge.

Lendale Hearn and Murray Taylor were convicted of having engaged in a criminal conspiracy to receive and conceal stolen goods moving in interstate commerce in violation of 18 U.S.C. § 371. In addition, Taylor was convicted of the substantive offense of receiving and concealing stolen goods moving in interstate commerce in violation of 18 U.S.C. § 2315. Hearn received a three year sentence, with all but six months having been suspended, and with 30 months probation to follow. Taylor received two concurrent sentences of a year and a day, together with a fine of $500.00 upon each of the two counts upon which he was convicted. The principal contentions of error made by each appellant in these appeals, which have been consolidated for hearing, center around the admissibility of evidence obtained in the course of certain searches and seizures and the sufficiency of the evidence to warrant their respective convictions.

The record upon these appeals reflects that the appellants were indicted jointly with two other individuals, L. J. Griffin and Dewey Berryhill, in a four-count indictment. The first count charged all four defendants with having engaged in a conspiracy to transport, receive and conceal stolen property and stolen motor vehicles moving in interstate commerce. The second and third counts charged the co-defendant Griffin with the substantive offense of receiving and concealing stolen property moving in interstate commerce. The fourth count charged the appellant Taylor with the substantive offense of receiving and concealing stolen property moving in interstate commerce. Upon the trial of the case the jury found Hearn, Taylor and Griffin guilty upon the conspiracy count but acquitted the co-defendant Berryhill on that count. In addition, Griffin was found guilty upon the second and third counts and Taylor was found guilty upon the fourth count. No appeal was taken by the co-defendant Griffin in regard to his convictions.

The appellants, Hearn and Taylor, contend, among other matters, that the evidence was insufficient to support their respective convictions. The settled rule, in this regard, is that in reviewing the sufficiency of the evidence to support a conviction this Court " . . . cannot weigh the evidence but we must take the view of it, and the inferences reasonably and justifiably to be drawn from it, most favorable to the Government and determine therefrom whether a verdict against the appellant might have been lawfully rendered . . ."

---

* The Honorable Frank W. Wilson, Chief Judge, U. S. District Court for the Eastern District of Tennessee, sitting by designation.

United States v. Wolfenbarger, 426 F.2d 992 (6th Cir. 1970).

When all reasonable inferences are accorded and the evidence is viewed in the light most favorable to the Government, the jury could have found the following facts, having reference to the charges in the first count of the indictment, to have been established beyond a reasonable doubt. Sometime during the evening of Sunday, October 3, 1971, a Model #2200 Massey-Ferguson tractor, having a front end loader on one end and a backhoe on the other and having a value of $5,500.00 (which equipment will hereinafter be referred to simply as a backhoe), was stolen from the premises of its owner, the McBride Construction Company, in Paris, Tennessee. The backhoe, which was painted yellow and had certain distinctive features, including plastic sleeves placed over the hydraulic lines by the owner to afford additional protection to those lines, was loaded at the time of the theft upon a yellow 3-axle metal trailer, which in turn was hitched to a yellow truck. All three pieces of equipment were stolen upon the occasion of October 3, 1971.

Sometime during the first part of October, 1971, the defendant Hearn, accompanied by the co-defendant Berryhill, was observed driving a truck and trailer loaded with a backhoe, all of the equipment being of the same description as the stolen equipment, in Weakley County, Tennessee, which adjoins Henry County where Paris, Tennessee is located. Upon this occasion the defendant Hearn was observed making a delivery of the backhoe to the co-defendant Griffin at his farm in Weakley County, Tennessee. Hearn and Griffin conversed for some 30 minutes at the time of this delivery and then Hearn left, driving the truck and trailer, but leaving the backhoe with Griffin. About a week after the theft occurred, the truck and trailer were discovered abandoned along the highway in Weakley County, Tennessee, and were returned to their owner.

The defendant Taylor also lived on a farm in Weakley County, Tennessee, his farm being some three miles from the farm of the defendant Griffin. During the months of October and November 1971, Taylor was observed to have on his farm a backhoe of the same make, model and description, and having the same distinctive features as the stolen backhoe. He told an acquaintance that he had obtained the backhoe from a certain individual. Upon the trial that individual denied the statement. During the time that Taylor had the backhoe he allowed a neighbor to use it. Several persons who observed the backhoe on this occasion testified that it was the same piece of equipment as the backhoe that they inspected at the McBride Construction Company when the stolen backhoe was recovered. When Taylor retrieved the backhoe from his neighbor, he stated that he had to deliver it to someone else. In February of 1972, after the stolen backhoe had been recovered, Taylor was interviewed by the F.B.I. and denied that he had ever had a backhoe in his possession or on his farm.

In late December 1971, the defendant Griffin delivered the backhoe to an equipment dealer in Marion, Arkansas, with instructions that he rent it or sell it for him. On this occassion, Griffin, quoted such a low price on the equipment that the dealer asked if it were "hot," to which Griffin replied, "It may be a little warm." In another conversation Griffin advised the dealer that he would get rid of the backhoe "if I have to run it off in the river."

On January 8, 1972, Griffin picked up the backhoe in Marion, Arkansas, and transported it back to his farm in Weakley County, Tennessee. On January 14, 1972, the backhoe was found in a tool shed on Griffin's farm by local law enforcement officers in the course of a search of the premises.

In addition to the foregoing evidence regarding the backhoe, evidence was introduced in regard to a motorcycle referred to in one of the overt acts alleged in the conspiracy count. That evidence reflected that a Honda motorcycle, bearing a certain identification number, was

stolen in LaFayette, Louisiana, on a date believed by the owner to have been in about October of 1971. The defendant Hearn was shown to have returned from the vicinity of LaFayette, Louisiana, to Weakley County, Tennessee, in an enclosed truck during the latter part of September of 1971. In December of 1971 Griffin traded the Honda for another piece of equipment at a motorcycle shop in Union City, Tennessee.

The fourth count of the indictment charged the appellant Taylor with the substantive offense of receiving and concealing a stolen traxcavator moving in interstate commerce. When the evidence in regard to this count is viewed in a light most favorable to the Government, the jury could find the following facts to have been established beyond a reasonable doubt. Upon March 17, 1971, a new Caterpillar traxcavator, Model No. 955K, bearing a certain identification number and having a value of $31,000 was stolen from the S & W Construction Company in Memphis, Tennessee. Upon October 15, 1971, the traxcavator was recovered by the police in Gary, Indiana. Two days later the traxcavator was again stolen, this time from the lot where the police had stored the equipment. Upon January 12, 1972, the traxcavator was located in a barn upon the farm of the appellant Taylor in Weakley County, Tennessee, during the course of a search of the premises by local law enforcement officers. Bales of hay had been placed around the traxcavator to conceal its presence in the barn. Taylor had purchased the hay some months previous to feed two horses which he kept in the barn lot. When shown the traxcavator following its discovery, Taylor remarked to the officers "You wouldn't believe that somebody could put this in my barn and me not know it."

Upon the foregoing state of the record it is clear that sufficient evidence exists to support the verdict as to both Hearn and Taylor upon the conspiracy count. It is contended that evidence of a conspiratorial agreement is lacking. While the evidence may be insufficient to establish a conspiratorial agreement regarding the transportation of the motorcycle, there is a clear sufficiency of the evidence to establish a conspiratorial agreement regarding the receiving and concealing of the backhoe. It is not necessary that the proof establish a formal agreement in this regard. It is sufficient if the unlawful agreement may be inferred from all of the circumstances. As stated by this Court in the case of Poliafico v. United States, 237 F.2d 97, 104 (6th Cir. 1956):

"Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a development and collocation of circumstances."

It is likewise clear that the evidence is sufficient to support the jury verdict finding the appellant Taylor guilty of receiving and concealing the traxcavator as charged in the fourth count of the indictment.

However, with respect to each of the foregoing counts it is contended by the appellants that evidence obtained as a result of an unlawful search was improperly admitted in the course of their trial, and that the verdict was rendered invalid accordingly. Regarding the conspiracy count, it is contended that the trial court was in error in failing to sustain the motion of each defendant seeking to suppress evidence obtained as a result of the search of the co-defendant Griffin's farm, which search led to the discovery of the backhoe in his tool shed. Regarding the fourth count, it is contended that the trial court was in error in failing to sustain the motion of the defendant Taylor to suppress evidence obtained as a result of a search leading to the discovery of the traxcavator in his barn. This Court must accordingly turn its attention to these contentions.

With respect to the search which led to the discovery of the stolen backhoe in the tool shed of the co-defendant Griffin, certain additional facts become relevant. As previously noted, upon January 8, 1972, Griffin returned the back-

hoe from Marion, Arkansas, to Weakley County, Tennessee. There was also evidence in the record which would reflect that upon the same weekend Griffin stole a Model B–4 Caterpillar Bulldozer from the dealer in Marion, Arkansas, and transported it to Weakley County, Tennessee, where he concealed it on an abandoned farm near his home, a matter for which he was convicted as charged in the second count of the indictment. When local law enforcement officers received information regarding the theft of the bulldozer, they obtained a warrant to search the Griffin farm for it. In the course of an unsuccessful search for the bulldozer, they discovered a backhoe in the tool shed and secured its identification number. Using this means to confirm that the backhoe was stolen, they obtained a search warrant and returned to the premises and seized the backhoe, which was the stolen equipment referred to in the conspiracy count.

It appears, however, as asserted by the appellants, that each of the above referred to search warrants was defective in one or more respects, including the fact that they each recited that the information contained therein had been obtained from an informant whose identity was not stated and whose reliability was not reflected so as to enable the magistrate to form a judicial opinion thereon, all as required by Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

In response to this contention, it is the position of the Government that the appellants had no interest in the premises where the backhoe was found, and therefore have no standing to question the legality of the search of those premises. It is true, as contended by the Government, that neither Hearn nor Taylor has ever asserted any interest in the backhoe or in the Griffin premises that were searched.

■ It is well settled, of course, that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). In order to have standing to object to an unlawful search, a person must have been the victim of the unlawful search. That is, he must have been the person against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search directed at another.

As a basis for asserting the right to object to the search of Griffin's premises, the appellants make two contentions. Relying upon McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L. Ed. 153 (1948), they assert that if one co-defendant has standing to challenge an unlawful search, all other co-defendants likewise have standing. Relying upon Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1968), they assert that where possession is an essential element of the offense charged, all defendants charged with such possession have standing to challenge an unlawful search regardless of any lack of personal interest in the premises searched or the property seized.

The foregoing general propositions are not, however, an accurate statement of the present law. Any bases for drawing such general propositions of law from the cases of McDonald v. United States, *supra* and Jones v. United States, *supra*, have been largely, if not wholly, removed by the later cases of Alderman v. United States, 394 U.S. 165, 173 n. 7, 89 S.Ct. 961, 22 L.Ed.2d 176, 186 n. 7 (1968) (limiting the automatic standing rule of *McDonald* to guests "on the premises searched") and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (forbidding the use upon trial of pretrial admissions against interest made to achieve Fourth Amendment standing in a motion to suppress evidence, thereby removing much of the rationale for the automatic standing rule enunciated in Jones v. United States).

Furthermore, the present case, involving as it does co-defendants to a conspiracy charge seeking to assert Fourth Amendment standing through a co-conspirator, would come within the rules only recently laid down in the case of Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). In *Brown* two defendants were convicted of conspiring with a third to transport stolen goods in interstate commerce. Evidence obtained from an unlawful search of the co-conspirator's premises was admitted in the separate trial of the other two defendants. Concluding that no error was made in thus admitting the evidence as to the two defendants who "failed to allege any legitimate interest of any kind in the premises searched or the merchandise seized," the Court stated:

> "[T]here is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) had no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure . . ." 411 U.S. at 229, 93 S.Ct. at 1569, 36 L.Ed.2d at 214.

The appellants seek to avoid the rules laid down in *Brown* and maintain standing to assert Fourth Amendment rights with regard to the search of their co-defendant's premises both by distinguishing the facts in *Brown* from the present case and by asserting that possession at the time of the search was an essential element of the offense with which they were charged and convicted.

In seeking to distinguish *Brown* they assert that no prior illegal search was there involved, that, unlike the present case, the conspiracy charged was limited to a date prior to the date of the search under attack and that the offense charged in *Brown* was a conspiracy to transport, and not a conspiracy to receive and conceal, the contention here being that, unlike *Brown,* possession is an essential element of the offense for which the appellants were charged and convicted. These distinctions, however, are of no avail. The appellants would no more have standing to complain of a prior search of the Griffin premises than they would to complain of the search under attack. All other attempted distinctions are predicated either upon the assumption that a co-conspirator's claim of constructive possession is sufficient to accord him standing, an invalid assumption and one implicitly rejected in footnote number 4 of the *Brown* opinion, or upon the assumption that possession at the time of seizure is an essential element of the crime of conspiracy to receive and conceal, an invalid legal deduction. Possession, on the day of seizure or otherwise, is not an essential element of the crime of conspiracy to receive and conceal. The crime of conspiracy is not the same as the substantive crime which is the objective of the conspiracy. The gist of the crime of conspiracy to receive and conceal is the unlawful *agreement* to receive and conceal, accompanied by one or more acts in furtherance of the unlawful *agreement*. United States v. Ketola, 455 F.2d 83, 85 (9th Cir. 1972).

Applying the rules laid down in Brown v. United States, *supra*, to the facts of this case, the appellants were without standing to object to the search of their co-defendant's premises and the evidence obtained as a result of the search was properly admitted as to them.

Turning to the contention of the appellant Taylor that the trial court was in error in failing to suppress evidence obtained as a result of the search leading to the discovery of the traxcavator in his barn, certain facts additional to those heretofore stated become relevant. Upon January 12, 1972, local law enforcement officers obtained a state warrant to search the defendant Tay-

lor's premises for a stolen Hobart Welder. Having located the welder at one outbuilding, they continued the search by going to a barn some 150 yards away where they located the traxcavator concealed behind bales of hay. Taylor was not present on the farm at the time of this search. He returned shortly thereafter, however, and was told by the officers of their seizure of the stolen welder. A warrant of arrest having been procured in the meanwhile by one of the officers, Taylor was advised of his arrest and of his constitutional rights in regard thereto. Without disclosing their prior search of his barn, the officers then proceeded to interrogate Taylor regarding the traxcavator. Although there is some variance in the testimony at this point, the following testimony of one of the officers is representative of that which occurred:

"The best I remember, one of us asked him about the caterpillar and he said that he didn't know anything about a caterpillar being in the barn, that he put that hay in there some time ago, six or eight months, and had not been back in that barn since that time and knew nothing about it. So I believe I made the statement to him then: 'Well, Mr. Taylor, we don't want to charge you with anything that you don't know anything about, so let's go look at it.'"

In response to this, Taylor said, "Well, let's go see it." With Taylor leading the way, he and the officers then went to the barn. Upon observing the traxcavator concealed behind the hay, Taylor remarked, "You wouldn't believe that somebody could put this in my barn and me not know it." At no time during these proceedings was Taylor physically restrained in any manner. After the traxcavator was "discovered," he was permitted to go on his way and turn himself in at the jail later in the day.

Since the search warrant for the Hobart Welder was defective in that it, too, failed to provide adequate facts in regard to the reliability of the informer, as required by Aguilar v. Texas, *supra,* and Spinelli v. United States, *supra,* and since it is clear that the continuation of the search after location of the Hobart Welder did not comport with constitutional standards, Marron v. United States, 275 U.S. 192, 48 S.Ct. 741, 72 L. Ed. 231 (1927); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), the admission of evidence concerning the location and discovery of the traxcavator can only be supported upon the theory that Taylor's statements and actions in going to the barn rendered the search on that occasion a consential one.

The trial court found the search to have been a consential one. Before this finding can be overruled, it must be found to have been clearly erroneous. *See* United States v. Rose, 415 F.2d 742 (6th Cir. 1969), cert. denied, 396 U.S. 971, 90 S.Ct. 458, 24 L.Ed.2d 438 (1969).

█ It has long been recognized that consential searches are "reasonable" and thus may lawfully be made without a search warrant. Nor does a prior unlawful search render evidence obtained by a subsequent consential search inadmissible, United States v. Willis, 473 F. 2d 450 (6th Cir. 1973), although, as shall be shortly noted, the use of unlawfully obtained information in procuring consent is a relevant fact to consider in determining the voluntary nature of the consent.

The guidelines for testing the validity of a search asserted to have been made with the consent of the accused are those set forth in the recent case of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). As stated by the Court in that case: "The constitutional question in the present case concerns the definition of 'consent' in the Fourth and Fourteenth Amendments context." Starting with the premises that "when a prosecutor seeks to rely upon consent to justify

the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given," 412 U.S. at 222, 93 S.Ct. at 2045, 36 L.Ed.2d at 860, the Supreme Court rejected the theory that to establish "consent" the prosecution must establish a constitutional "waiver," that is, "an intentional relinquishment or abandonment of a known right or privilege." Rather, the Court concluded that voluntariness "is a question of fact to be determined from the totality of all the circumstances." and "it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case that is evidenced in our prior decisions involving consent searches." 412 U.S. at 227, 93 S.Ct. at 2048, 36 L.Ed.2d at 863.

■ Thus, the presence or absence of a single consential or coercive factor is not of itself controlling as a matter of law. As illustratively pointed out by the Court:

"Some of the factors taken into account have included the youth of the accused . . . his lack of education . . . or his law intelligence; * * * the lack of any advice to the accused of his constitutional rights, . . . the length of detention . . . the repeated and prolonged nature of the questioning . . . and the use of physical punishment, such as the deprivation of food or sleep . . . In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted." (Citations omitted) 412 U.S. at 226, 93 S.Ct. at 2047, 36 L.Ed.2d at 862.

■ Applying the guidelines in Schneckloth v. Bustamonte to the facts of the present case, the factors tending to establish a voluntary and uncoerced consent on the part of the appellant Taylor to the search of his premises include: (a) his having been initially given his *Miranda* advice of rights incident to his arrest on the stolen welder charge; (b) his continued freedom of movement and the lack of any physical restraint incident to his arrest upon the stolen welder charge; (c) his presence on his own farm and in familiar surroundings; (d) his acquiescence in the officer's suggestion to "go look at it" (*i. e.*, the traxcavator) and his affirmative response, "Well, let's go see it"; and (e) his leading the way to the barn and in mounting the bales of hay in advance of the others.

Upon the other hand, factors tending to establish an involuntary and coercive consent search include: (a) the presence of three law enforcement officers on his farm; (b) his initial arrest upon the stolen welder charge; (c) the suggestion by the officers that the barn be inspected for the presence of the traxcavator; (d) the use by the officers of information gained by a prior unlawful search as the predicate for their suggestion that the barn be inspected for the presence of the traxcavator; and (e) the absence of any warning to the appellant that he had a constitutional right to refuse to consent to a search of the barn.

An evaluation of the foregoing would indicate to this Court that the coercive factors, though some of them are subtle and implicit, would nevertheless substantially outweigh the non-coercive ones. As stated in the *Schneckloth* case:

"In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." 412 U.S. at 229, 93 S.Ct. at 2049, 36 L.Ed.2d at 864.

Bearing in mind that consent must be proved by "clear and positive testimony," Amos v. United States 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921), and "must be unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion," Simmons v. Bomar, 349 F.2d 365 (6th Cir. 1965), this Court is of the opinion that such consent as was here involved was not "freely and voluntarily" given and that the conclusion of the trial court to the contrary was clearly erroneous. *See* Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (consent held invalid where given on officer's representation that he had a search warrant). *See also* Villano v. United States, 310 F.2d 680 (10th Cir. 1962) *citing* United States v. Page, 302 F.2d 81 (9th Cir. 1962) ("The Government's burden is greater where consent is claimed to have been given while the defendant is under arrest").

■ Furthermore, under the facts of this case, the same result would be required by the application of the legal principle that information gained by law enforcement officers during an illegal search cannot be used in a derivative manner to obtain other evidence, the so-called "fruit of the poisonous tree" doctrine. *See* Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). *See also* Fike v. United States 449 F.2d 191 (5th Cir. 1971); United States v. Brandon, 467 F.2d 1008 (9th Cir. 1972); United States v. Cole, 463 F.2d 163 (2nd Cir. 1972).

Other matters of less import are complained of by the appellants. These have been considered by this Court and are found to be without merit.

The conviction of each appellant upon Count I of the indictment (conspiracy) will be affirmed. The conviction of the appellant Taylor upon Count IV of the indictment (receiving and concealing) will be set aside and a new trial granted upon that count.