**UNITED STATES of America, Plaintiff,**

v.

**Cleveland Dean EDMOND, Defendant.**

**Crim. No. 5–81171.**

United States District Court,
E. D. Michigan, S. D.

June 7, 1976.

Steven W. Rhodes, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Thomas E. Jackson, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

KEITH, Chief Judge.

This matter is before the Court on defendant's motion to suppress evidence filed pursuant to Rules 12 and 41 of the Federal Rules of Criminal Procedure. The defendant has been charged in a two count indictment with making a false statement in connection with the acquisition of a firearm and with possession of a firearm after conviction of a felony in violation of 18 U.S.C. sec. 922(a)(6) and 18 U.S.C. Appendix sec. 1202(a)(1). An evidentiary hearing was held on this matter to determine the relevant facts.

On May 9, 1975, at approximately 1:00 P.M., Detective James Conant of the Jackson, Michigan Police Department, was given the following information from the Jackson Police "tip information" operator. Detective Conant was told that a caller, who did not identify him or herself, claimed that a black man named Cleveland Williams was selling drugs from a green Pontiac automobile parked in the Warwick Court area. The caller described the man as wearing a wide brimmed hat. On the basis of this anonymous call, Detective Conant went with another detective to investigate. From a distance of about 100 yards, the two detectives observed a black man in a wide brimmed hat standing by a green Pontiac. The man was observed in the company of two other men. During the next five or ten minutes, the detectives observed two "transactions", but the officers could not see what, if anything, was being exchanged.

At one point during the surveillance, the officers observed one of the men remove an object wrapped in a white cloth from the interior of the car and place it in the trunk of the car. Back up police units were then called, and the officers approached the men with their service revolvers drawn. The officers then ordered the men to lean against the car. The men were searched, but no weapons or illegal drugs were discovered. Detective Conant then proceeded to conduct a warrantless search of the inside of the car. No drugs or guns were discovered as a result of this search.

By this time, several more police officers had arrived on the scene, including a uniformed policeman holding a 12 gauge shotgun with the barrel pointing straight up in the air. In all, there were at least five, and possibly as many as ten, police officers on the scene.

The officers attempted to search the trunk of the car, and requested permission to do so from the man wearing a wide brim hat, who had been identified as Cleveland Edmond. By all accounts, Mr. Edmond refused to sign a consent to search form. There was also testimony that he had attempted to physically prevent the search of the interior of the car. In addition, the evidence tends to show that at least one officer informed Mr. Edmond that the car would be impounded at his expense, and an attempt would be made to obtain a search warrant if Mr. Edmond continued to refuse the officers entry into the trunk of the automobile. In fact, there was uncontradicted testimony at the hearing that Detective Conant called a tow truck. It was after the tow truck arrived that Mr. Edmond produced the keys to the trunk. The officers seized a firearm which was located in the trunk. However, the trunk was not searched for illegal drugs, and no illegal drugs were seized. It is this firearm which defendant now moves to have suppressed.

■ Searches conducted without a warrant are *per se* unreasonable under the Fourth Amendment, except in a "few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). It is the opinion of this Court that

the Government has failed to establish that the search in this case falls within any of the exceptions to the warrant requirement. Specifically, the Court finds that the defendant did not consent to the search, nor can the search be justified under the exception for a warrantless search of an automobile where exigent circumstances exist.

## I

■ This Court has found that the search of the trunk of the Pontiac automobile cannot be justified on the basis of defendant's alleged consent. Where the consent of the defendant is being used by the government to justify the lawfulness of a search, the government bears the burden of proving that the consent was, in fact, "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In this case, the government has failed to meet its burden.

■ The Court's conclusion that defendant's will was in fact "overborne" is based on the Court's evaluation of the factual circumstances surrounding the search. As the Supreme Court held in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the question whether a consent to search is in fact "voluntary," is a question of fact to be determined from the totality of all the circumstances. Thus, the presence or absence of a single consensual or coercive factor is not of itself controlling as a matter of law. *United States v. Hearn*, 496 F.2d 236 (6th Cir. 1974). Rather, the court must carefully sift the unique facts and circumstances of the case before it to determine whether the coercive factors, even those that are subtle and implicit, nevertheless outweigh the noncoercive ones, *United States v. Hearn, supra,* at 243. As stated in the *Schneckloth* case,

> "In examining all of the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." 412 U.S. at 229, 93 S.Ct. at 2049.

■ In following the guidelines of *Schneckloth*, this Court is particularly mindful of the serious threat to civilized notions of justice which unfair police tactics pose. While the Court is well aware of the need for police investigative techniques as a tool for effective enforcement of the criminal laws, governmental intrusions into an individual's privacy must be carefully scrutinized. Where, as here, the defendant initially refused the police permission to search the trunk of his car, and where the defendant steadfastly refused to sign a consent-to-search document, the coercive factors clearly outweigh any inference which might otherwise be drawn from defendant's ultimately handing over the keys to the trunk. The factors tending to establish an involuntary and coercive consent include: (a) the presence of at least five and possibly ten police officers, several of whom had their weapons drawn at some point during the investigation (b) the threat that defendant's car would be impounded at his expense if he refused to consent to the search and (c) the fact that it was only after the appearance of the tow truck that defendant turned over the keys to the trunk.

It is the finding of this Court that the government has failed to show consent that was "unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." *U. S. v. Hearn, supra.*

## II

■ As a second ground for upholding the search, the government contends that there existed sufficient probable cause plus exigent circumstances to conduct a warrantless search of defendant's automobile. This Court finds that the search of the trunk of the automobile was done without probable cause. Probable cause to effectuate a warrantless search would exist only if the facts and circumstances known to the police officers, at the time they requested the keys to the trunk, would warrant a prudent person in believing that an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The circumstances sur-

rounding the search of defendant's automobile fall short of meeting this standard.

It is the government's contention that the description of the car and of the subject, Cleveland Williams, which the police received as an anonymous tip, together with the officers' observation of apparent "transactions" and of the placing of something in the trunk, constitute sufficient probable cause to justify the warrantless search of the automobile under the "exigent circumstances" exception. The government submits that the corroboration of the information contained in the tip establishes probable cause.

■ Recently the Sixth Circuit had occasion to rule on the validity of a police search in a similar situation, where the question before the court was whether the tip plus information gathered through subsequent investigation verifying the tip satisfied an exception to the warrant requirement of the Fourth Amendment. In *United States v. Jordan*, 530 F.2d 722 (1976), the Sixth Circuit set forth guidelines for evaluating the merit of the government's argument. The Court ruled that even where the government does not rely on the tip alone to establish probable cause, the probative value of the tip must still be assessed according to the standards established in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In other words, there must be something in the record on which the court can make an independent evaluation of the probative value of the information which was received on the tip line. Using the two-pronged test which the Supreme Court devised in *Aguilar, supra*, the Court stated that there must be some indication that the informant had an opportunity to observe the events which he or she reported, and secondly that the police had a basis for relying on the informant's tip, i. e., the informant was credible or his information reliable.

■ This Court is of the opinion that the tip in the instant case contains nothing more than the conclusory allegations of an anonymous source. The information which was received over the tip line was that a black man named Cleveland Williams was wearing a wide brimmed hat and was selling drugs in the parking court of the Warwick Court area. It was alleged that he was conducting these transactions next to or out of a green Pontiac automobile. As in *United States v. Jordan, supra*, the tip in this case does not disclose a substantial basis for crediting the information supplied the police. Not only is the caller anonymous, but the source of the caller's information is unknown. Moreover, the description of the accused's alleged criminal activity is equally vague. The police were told that the defendant was involved in "drug and gun transactions," but there is no mention of the specific nature of the contraband or the quantity involved.

■ The government argues that the observations by the police officers at the scene corroborate the details of the tip and form the basis for probable cause. This Court disagrees. While most of the information received on the tip line had been confirmed by the officers before they proceeded to search the trunk, certain vital details, including the very essence of the tip had not. The name of the black male was Cleveland Edmond, not Cleveland Williams, and there was no testimony that Mr. Edmond had ever used such an alias. More importantly, after observing the defendant for a period of time, the police characterized hand movements of the defendant as possible transactions. In that the officers could not observe what, if anything, was being transacted, this observation offers minimal verification of the allegations in the tip. When coupled with the fact that a search of the defendant and his companions revealed no drugs and no weapons, the officers' observations at the scene offer little further to suggest a basis for believing that the defendant was engaged in committing a crime. As the Sixth Circuit found in *U. S. v. Jordan, supra*, nothing in the officers' testimony at the time they commenced the warrantless search was inconsistent with completely innocent behavior on the part of the defendant.

The Court recognizes the fact that information gathered by the arresting officers can often be used to sustain a finding of probable cause for a search that could not otherwise be adequately supported by the tip alone. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). However, in this case, the Court must dismiss the government's argument that the information gathered through the officers' surveillance tends to corroborate the crux of the information received on the tip line. As the Supreme Court observed in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the additional information fails to furnish the requisite probable cause where the results of the investigation contain "no suggestion of criminal conduct when taken by themselves—and they are not endowed with an aura of suspicion by virtue of the informer's tip." at 418, 89 S.Ct. at 590.

Accordingly, this Court holds that the warrantless search initiated by the information received on the tip line was not based upon probable cause and, therefore, none of the exceptions to the warrant requirement are applicable. Defendant's motion to suppress one Armenius .38 caliber revolver, serial number 0053461 should be, and hereby is, GRANTED.

IT IS SO ORDERED.