825 F.2d 412
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harlan GRUBB, Defendant-Appellant.
 No. 86-5937
 United States Court of Appeals, Sixth Circuit.
 July 28, 1987.
 
 Before KENNEDY, WELLFORD and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant appeals his jury convictions on four counts of a five count indictment charging him with (1) unlawfully using marihuana and possessing explosives (dynamite), (2) unlawfully storing explosives, (3) illegally possessing with intent to distribute marihuana, (4) illegally manufacturing and possessing marihuana with intent to distribute, and (5) possessing an illegal moonshine still. Grubb was acquitted by the court of the moonshine still count. He was sentenced to up to four years in prison, plus parole and special parole on the other counts.
 
 
 2
 There are three issues for our consideration on appeal: whether the court committed reversible error by not suppressing evidence obtained by a warrantless search of Grubb's barn; whether the defendant's conviction for violating 18 U.S.C.A. Sec. 842(i)(3) is void because the statute incorporates a definition of 'unlawful user of . . . marihuana' that was repealed in 1970; and whether either of the convictions under counts 3 and 4 are void as violative of the double jeopardy clause.
 
 I.
 
 3
 Kentucky State Police Detective Phil Woods and Clay County Sheriff Harold Sizemore flew over areas of Clay County, Kentucky, in an airplane looking for marihuana crops in August of 1984. They observed what they believed to be marihuana fields on or near the defendant's residence. On August 21, 1984, Woods and Sizemore, accompanied by Clay County Deputy Sheriff Ray Ruth, Constable Jack Sizemore, and two other State Police Officers, went to Grubb's residence located at the end of a county road, looking for the fields or crops of suspected marihuana which they detected from the air. They were armed with regular issue side arms and semi-automatic weapons, and several wore camouflage in accord with standard Kentucky State Police procedure.
 
 
 4
 When the officers arrived at the defendant's residence, they observed two large plants of marihuana growing in large buckets near defendant's front porch. Grubb, observing the officers on the way to his house, turned his vehicle around and followed them back to his residence. When advised by Woods that marihuana had been located, Grubb responded that the marihuana belonged to him and that it was for his personal use. Officer Woods then arrested him and advised him of his rights. Grubb was never handcuffed, though he was unquestionably in police custody.
 
 
 5
 After his arrest, Grubb remained with Constable Sizemore while the other officers in separate groups pursued four wheel drive vehicle tracks past his residence. They discovered several small patches of marihuana growing in open, unfenced areas. The patches were never established to have been on Grubb's land; however, Grubb admitted in a statement he voluntarily made the next day to Alcohol, Tobacco, and Firearms Agent Nierengarten that 'the twenty-five plants they found up the right hollow was on my land.'
 
 
 6
 Upon returning to the defendant's residence after searching for growing plants, Sheriff Sizemore and the other law enforcement officers discovered a disassembled pickup truck, next to which was a broken vehicle identification number (VIN) plate not affixed to the truck. The VIN information was immediately sent by radio to the National Crime Information Center, and the truck bearing that VIN was reported stolen from Lexington, Kentucky. Sheriff Sizemore then asked Detective Woods to obtain Grubb's consent to a search of the barn for stolen truck parts. During a suppression hearing, Woods testified that
 
 
 7
 I asked Mr. Grubb if we could take a look for the stolen parts of the truck, look through the barn and stuff like that. Like I say, at this point he didn't seem to be too concerned about what's going on. I told him, I said, you don't have to let us search without a warrant, but we're here, we want to look for the stolen parts of the truck. He said, go ahead and look anywhere you want to.
 
 
 8
 When the officers searched the barn they found additional stolen truck parts, seventy-two sticks of dynamite commonly used in the local coal mines, about ten pounds of processed marihuana, and the parts to a moonshine still. None of these items could be seen from outside the barn. At that time, and after being twice given his Miranda warnings, Grubb allegedly admitted using the dynamite to shoot coal for his personal use, and he admitted to having used the still a year or so earlier. He denied any knowledge, however, about the marihuana either in the nearby fields or in the barn.
 
 
 9
 On August 22, 1985, the following day, Grubb was interviewed at his residence by agent Don Nierengarten of the Alcohol, Tobacco, and Firearms Bureau. He was advised of his Miranda warnings and he signed a waiver of those rights and agreed to make a statement. He told the officer that he had an eighth grade education and that he could read and write. During that interview, Grubb allegedly told Agent Nierengarten that he had given consent to the officer to make the challenged search.
 
 
 10
 Grubb examined witnesses during a suppression hearing. The witnesses all testified that they heard Constable Sizemore telling Grubb about Sheriff Sizemore's violent temper and predisposition to beat and 'pistol whip' suspects who did not 'cooperate.'
 
 
 11
 Grubb testified that, while the other officers were in the fields searching, Constable Sizemore told him:
 
 
 12
 how good Harold [Sizemore] was and how mean and ill he was, and about him pistol whipping some boy up in the head of Goose Creek and for me not to say nothing, do nothing, let him do what he wanted to. He said if you make him mad, he will whip you. He said he just likes to smack people around a little, or something like that, the way he kept talking. And we fooled around a while and me and Sherrie and him was, me and Sherrie was sitting in the door of the cabin and he was standing in front of us, and the phone went off, his walkie-talkie, and a call come through, and Harold was supposed to appear in court. And he couldn't make it, said he was tied up. And he got bad mad and told them to just let them go. And he cuss, cussed and sounded awful mad to me. Jack said he was already awful mad, you had better not say nothing or resist him none, just let him do what he wants to.
 
 
 13
 Grubb testified that he neither gave nor refused consent to search and that he 'felt bad threatened' and 'very afraid' at the time. On cross examination Grubb said 'I told them that they could look around the barn, . . . I didn't tell them that they could look in the barn.' As mentioned, however, the day after the search Grubb voluntarily stated that he had given consent to search.
 
 
 14
 The district court denied the motion to suppress. It credited witnesses' statements to the effect that Grubb was not coerced, and held that Grubb had consented to the search of the barn.
 
 
 15
 Just before the jurors were brought in at trial, the defendant moved to require the government to elect between Counts 3 and 4 of the indictment or to consolidate them. The court denied the motion saying that though the charges were similar, the substance underlying those counts (marihuana) was in different forms and in different places. Count 3 was for possessing with intent to distribute ten pounds of processed marihuana while Count 4 was for manufacturing and possessing with intent to distribute the 266 marihuana plants seized in the fields.
 
 
 16
 The government elicited testimony from expert witnesses establishing that the alleged marihuana was in fact marihuana and that the alleged dynamite was in fact dynamite. After the government rested, the court granted the defendant's motion for acquittal as to Count 5 (the moonshine still count) only. The jury convicted Grubb of all remaining counts.
 
 II.
 A.
 
 17
 The police officers searched Grubb's barn without a search warrant. '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment'. Katz v. United States, 389 U.S. 347, 357 (1967) (footnote omitted). The evidence seized was indisputably not in plain view, and there were no demonstrated exigent circumstances. Consequently, the only basis upon which the evidence could have been lawfully obtained was a free and voluntary consent to the search, which must not have been 'the result of duress or coercion, express or implied.' Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973); Mincey v. Arizona, 437 U.S. 385, 390-91 (1978). 'Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.' Schneckloth, 412 U.S. at 248-49 (footnote omitted).
 
 
 18
 'The burden is on the government to prove that consent was voluntarily given. It need do so, however, only by a preponderance of the evidence, . . ..' 3 C. Wright, Federal Practice and Procedure Sec. 669, at 701 (2d ed. 1982) (citing, e.g., United States v. Mendenhall, 446 U.S. 544, 557 (1980), and United States v. Matlock, 415 U.S. 164, 177 n.14 (1974)). Though voluntariness is a question of fact, it is a preliminary issue for the court, not the jury, to decide, and it will be overturned only if the trial court's decision was clearly erroneous. United States v. Hearn, 496 F.2d 236, 242 (6th Cir.), cert. denied, 419 U.S. 1048 (1974); see Fed. R. Evid. 104(a); 3 C. Wright, supra Sec. 675, at 780.
 
 
 19
 Grubb points out significant factors weighing against the voluntariness of his consent, especially the testimony about the Sheriff's temper. The government responds that Detective Woods told Grubb that he could refuse to allow the search and require them to get a warrant, that in Grubb's statement to Agent Nierengarten on August 22, 1984, he admitted that he consented to the search, and that there is no evidence that Grubb was actually threatened. The prosecution points out that '[t]he only statement by Constable Sizemore in the record that even suggests Sheriff Sizemore possessed a violent disposition is one where he admits to telling the defendant that Sheriff Sizemore had a bad temper.'
 
 
 20
 The parties thus presented plausible testimony for their respective positions regarding consent or lack thereof. The district court found that 'this statement by Constable Sizemore did not occur' (concerning the Sheriff's disposition to use of force). While we might find it plausible to believe that Grubb was pressured into giving consent to search the barn, and may have reached a different result than did the trial judge, the question is whether the trial court clearly erred in finding that Grubb consented to the search. Hearn, 496 F.2d at 242 (emphasis added). 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). And, '[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' Id. at 573-74. 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' Id. at 574 (citations omitted).
 
 
 21
 There is evidence, including Grubb's own admission, to support the trial court's decision, and its decision is plausible in light of the entire record. Consequently, because we are not firmly convinced that a mistake has been made, we cannot conclude that the trial court 'clearly' erred on this issue. We conclude therefore that there was no demonstrated basis for reversal in this respect.
 
 B.
 
 22
 Grubb's next argument is that his conviction for violating 18 U.S.C.A. section 842(i)(3) is void because the statute to which it refers for the definition of 'unlawful user of . . . marihuana' has been repealed. He believes that a 'material element' of a charge under 18 U.S.C.A. section 842(i)(3), is that 'the jury must find the defendant was an unlawful user of marihuana as defined in Sec. 4761 of the Internal Revenue Code of 1954,' and that since that section has been repealed, the government cannot and did not, as a matter of law, prove all elements of the crime.
 
 
 23
 The resolution of this issue depends entirely on an interpretation of what congress meant by '(as defined in section 4761 of the Internal Revenue Code of 1954).' If, as Grubb contends, this phrase qualified the preceeding phrase 'unlawful user of . . . marihuana,' then it might appear that the repeal of section 4761 raises a question about the conviction under this criminal statute because there is no definition of 'unlawful user of . . . marihuana' anywhere in the United States Code. If, however, the phrase '(as defined in section 4761 of the Internal Revenue Code of 1954)' qualifies only 'marihuana,' as the government contends, then the statute is saved because 'marihuana' is now defined at 21 U.S.C.A. section 802(16).[1]
 
 
 24
 The statute under which Grubb was convicted provides:
 
 
 25
 (i) It shall be unlawful for any person--
 
 
 26
 .............................................................
 
 
 27
 ...................
 
 
 28
 * * *
 
 
 29
 (3) who is an unlawful user of or addicted to marihuana (as defined in section 4761 of the Internal Revenue Code of 1954) or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or
 
 
 30
 .............................................................
 
 
 31
 ...................
 
 
 32
 * * *
 
 
 33
 to . . . receive any explosive which has been shipped or transported in interstate or foreign commerce.
 
 
 34
 18 U.S.C.A. Sec. 842(i)(3) (1976) (emphasis added). Section 4761, before it was repealed, did not define 'unlawful user of . . . marihuana'; it defined only 'marihuana':
 
 
 35
 (2) Marihuana.
 
 
 36
 The term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.
 
 
 37
 26 U.S.C. Sec. 4761(2) (1964 edition), repealed by P.L. 91-513, Title III, Sec. 1101(b)(3)(A), Oct. 27, 1970, 84 Stat. 1292. This definition is essentially identical to that in section 802(16), 21 U.S.C.A. (quoted above). We conclude that Grubb's argument does not correctly interpret the statute and we affirm his conviction on this basis also.
 
 C.
 
 38
 Grubb's final argument is that his fifth amendment right not to be twice placed in jeopardy for the same crime has been violated. He argues that Counts 3 and 4 are essentially charging the same crime, that he was convicted for both, and that, therefore, his conviction (or one of them) should be reversed. Splitting the seized marihuana into two different groups, he claims, is unconstitutional because '[t]he state that the product is in is irrelevant to the offense charged.' Grubb cites several cases broadly recognizing that the fifth amendment protection is against being twice placed in jeopardy, not twice punished, United States v. Lansdown, 460 F.2d 164, 171 (4th Cir. 1972), and that the appropriate test is whether 'each provision requires proof of a fact which the other does not.' Blockburger v. United States, 284 U.S. 299, 304 (1932); see Robbins v. United States, 476 F.2d 26, 32 (10th Cir. 1973).
 
 
 39
 The government believes that Grubb was not twice convicted for the same offense because the Blockburger 'additional fact' test has been satisfied. It argues that, as held in United States v. Roberts, 747 F.2d 537 (9th Cir. 1984), it is 'clear that a defendant can be charged with both manufacturing and possession with intent to distribute marijuana without there being a violation of the defendant's fifth amendment rights'. The government also argues that, even if one or the other count is discarded, the defendant is not prejudiced since the two counts were merged for sentencing purposes and Grubb received only one three-year sentence. We agree.
 
 
 40
 The double jeopardy clause of the Fifth Amendment protects a defendant from multiple punishments for the same offense. For purposes of the double jeopardy clause, punishment includes imposition of a fine, imprisonment, and probation. However, cumulative punishment may be imposed for acts constituting violations of two separate statutory provisions, as long as each provision requires proof of an additional fact which the other does not.
 
 
 41
 8 Federal Procedure Sec. 22:210 (1982) (footnotes omitted). 'It has long been understood that separate statutory crimes need not be identical--either in constituent elements or in actual proof--in order to be the same within the meaning of the constitutional prohibition.' Brown v. Ohio, 432 U.S. 161, 164 (1977) (citations omitted). '[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' Blockburger v. United States, 284 U.S. 299, 304 (1932). 'If each [offense] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.' Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975).
 
 
 42
 Grubb was charged with and convicted of twice violating section 841(a)(1), 21 U.S.C.A.[2] Section 841(a)(1) is a broad statutory provision poroscribing several different types of conduct, each of which constitutes a distinct and separate offense. At a minimum, the statute proscribes (1) actually manufacturing controlled substances, (2) actually distributing controlled substances, (3) actually dispensing controlled substances, (4) possessing with intent to manufacture controlled substances, (5) possessing with intent to distribute controlled substances, and (6) possessing with intent to dispense controlled substances. Grubb has been convicted of twice violating this same statute; however, he was charged with and convicted of violating two different aspects of this one statute. Each charge and conviction rests on different proscriptions and each charge and conviction is supported by facts that are not necessary to support the other conviction. Count 3 charged that Grubb 'knowingly and intentionally did unlawfully possess with intent to distribute approximately 10 pounds, more or less, of marijuana, . . . all in violation of Title 21, United States Code, Section 841(a)(1).' (Emphasis added). Count 4 charged that Grubb 'knowingly and intentionally did manufacture and possess with intent to distribute marijuana, that is, 266 plants of marijuana, more or less, . . . all in violation of Title 21, United States Code, Section 841(a)(1).' (Emphasis added).
 
 
 43
 Count 3 required proof that Grubb knowingly possessed with intent to distribute marihuana. Proof of the fact that Grubb knowingly had ten pounds of marihuana in a processed, ready to use state in his barn satisfies and supports the Count 3 conviction. The mere fact that one possesses ten pounds of processed marihuana infers the intent to distribute. Count 4, on the other hand, required proof that Grubb knowingly manufactured marihuana. Proof that marihuana was growing (which is how marihuana is manufactured) on Grubb's own land satisfies and supports the Count 4 conviction. Count 3 did not require proof of the fact of 'growing' (i.e., manufacturing) marihuana; Count 4 did not require proof of the fact of 'possessing with intent to distribute marihuana.' Consequently, the two offenses are distinct, the Blockburger test is satisfied, and the two convictions did not violate Grubb's right not to be twice placed in jeopardy for the same offense.
 
 
 44
 Finally, we note that any double jeopardy problem was nonetheless cured by the district court's treating of the two convictions as one for sentencing purposes. Grubb could achieve at most reversal of one of the two convictions, and the net result of the sentence would be unaffected.
 
 
 45
 We find no double jeopardy violation. We AFFIRM in all respects, accordingly.
 
 
 
 [1]
 (16) The term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination
 21 U.S.C.A. Sec. 802(16) (Supp. 1987).
 
 
 [2]
 Section 841(a)(1) provides: 'Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . ..' 21 U.S.C.A. Sec. 841(a)(1) (1981)