PER CURIAM.
Defendant-appellant Robert Jones, Jr., having been already convicted of a felony in February 1984, was convicted by a jury in February 1987 for illegal possession on October 17, 1986, of a firearm in violation of 18 U.S.C. § 1202(a)(1) (now codified at 18 U.S.C. § 922 (g)(1)). The issue on appeal is whether the district court’s finding that Jones voluntarily consented to the warrant-less search which produced the firearm is clearly erroneous. For the reasons stated below, we hold that Jones’s consent was not voluntary. We accordingly reverse the judgment of conviction.
On October 17, 1986, as Debbie Jo Higgins and her teenage son, Joshua, were trying to start their car, Joshua observed a man carrying a long-barreled gun or rifle. Joshua thought that the man appeared to be angry or arguing with his female companion. Joshua saw the man place the firearm in the front seat of a green Buick. The man and woman then got into the car and drove away. Mrs. Higgins, alerted to these events by Joshua, wrote down the Buick’s license plate number and then called police.
The Bay City (Michigan) Police Department put out a radio message describing the incident and indicating that the license number was issued to Robert Jones. Detective Lt. Gordon McAllister spotted the car. Because he was driving an unmarked car, he called for assistance from a marked police car. Two responded. All three police cars stopped Jones in such a manner that Jones’s car was effectively blocked from leaving the scene. Jones got out of his car and asked what was wrong. Although there are some discrepancies among the testimonies as to what exactly was said, either Officer Gonyea or McAllis-ter told Jones that police had received a report that he had a gun and was mad at someone. Jones responded that he did not have a gun and that police could look in the car, which they did. At that point McAllis-ter noticed that Jones’s female passenger was crying. According to McAllister’s testimony, the woman, Jane Dufresne, told him that Jones did have a gun. When Jones was confronted with this information, Jones allegedly replied, “Well, I did have one earlier, but I just put it in the apartment.” McAllister recalled that he then said, “Bob, I don’t believe you’re supposed to have a weapon because you’re a convicted felon,” and asked for the firearm. *360 Jones said that police could have the gun which was back in his apartment. McAllis-ter asked Jones to follow him in his car to the apartment. Dufresne rode over in McAllister’s car. Officer Gonyea also followed in his police car.
Upon arriving at the apartment, Jones offered to get the firearm for the officers. They stated that they would rather have Dufresne retrieve it. Jones stayed outside by his car while the two officers and Du-fresne walked to the apartment. When Dufresne remembered that Jones had the keys, Jones on request gave them to one of the officers who handed them to Dufresne who then opened the door. Dufresne could not find the firearm, which the officers reported to Jones. Jones then said he could show them where it was. Jones walked into the residence, to a closet, and showed officers a shotgun, which was not loaded. Dufresne later testified that she and Jones had obtained the shotgun from a friend that day to take to her father who was going deer hunting. The officers confiscated the shotgun, which formed the basis for Jones’s subsequent arrest and indictment.
At no time did the police officers ever apprise Jones, who testified that he has not had even one day of any formal education and is illiterate, of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or of his right to refuse a search. Jones testified that he cooperated with police because he believed he was under arrest from the time his car was stopped and blocked by police. Nonetheless, the district court held that Jones voluntarily consented to the warrantless search for the gun and denied Jones’s motion to suppress evidence of the gun.
In Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), it was held that “whether a consent to a search was in fact ‘voluntary’ or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.” Id. at 227, 93 S.Ct. at 2047-48. The burden of proving voluntary consent to a warrantless search is on the government. Id. at 222, 93 S.Ct. at 2045. Moreover, “consent must be proved by clear and positive testimony, and, to be voluntary it must be unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion.” United States v. Scott, 578 F.2d 1186, 1188-89 (6th Cir.), cert. denied, 439 U.S. 870, 99 S.Ct. 201, 58 L.Ed.2d 182 (1978). The district court’s findings with regard to voluntariness will not be reversed unless clearly erroneous. Id. at 1189.
As the Court made clear in Schneckloth, no one single factor is determinative of voluntariness. 412 U.S. at 226, 93 S.Ct. at 2047. A careful consideration of all existing circumstances is necessary. Among the relevant circumstances to be scrutinized are the defendant’s youth, lack of education or low intelligence, the lack of any warnings regarding the accused’s constitutional rights, as well as evidence of duress or coercion, such as, deprivation of food or sleep and prolonged detention or questioning. Id. Although the defendant’s knowledge of the right to refuse consent to a search is not required to establish voluntary consent, the Supreme Court stressed in Schneckloth that:
The traditional definition of voluntariness we accept today has always taken into account evidence of minimal schooling, low intelligence, and the lack of any effective warnings to a person of his rights; and the voluntariness of any statement taken under those conditions has been scrutinized to determine whether it was in fact voluntarily given.
Id. at 248, 93 S.Ct. at 2058.
In the case on appeal the district court found that Jones’s consent was voluntary based on its view that Jones knew that, as a convicted felon, he was in “a pile of trouble” and therefore decided to cooperate with the police in the hope that the whole issue would go away. Although it is within the district court's province to determine credibility, the district court ignored factors under the Schneckloth guidelines which strongly suggest that Jones’s consent was involuntary. The unrebutted testimony is that Jones has had no formal *361 education. In addition, police admitted that they never apprised Jones at any point of his Miranda rights or of his right to refuse a search. Moreover, the initial stop and blocking of Jones’s car by three police cars established a custodial atmosphere and coercive environment. Although Jones subsequently drove in his own car to his residence, it was at the direction of police, two of whom accompanied him in their own cars. Undoubtedly, the district court was influenced by the facts that Jones did retain some freedom of movement when police entered his residence to look for the gun and that Jones agreed to get the gun when Dufresne could not find it. However, these “voluntary” acts must be examined within the overall context and psychological impact of the entire sequence of events, which began with a dramatic stop by three police cars which blocked Jones’s means of egress and then escorted him to the search after he was questioned without the benefit of Miranda warnings. Indeed, Jones testified at the suppression hearing that he thought he was under arrest and had to comply with the officers’ requests from the moment he was stopped and blocked from leaving.
As stated in Schneckloth:
In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.
412 U.S. at 229, 93 S.Ct. at 2049. See United States v. Hearn, 496 F.2d 236 (6th Cir.) (consent was involuntary despite defendant’s freedom of movement and presence on his own property, his ready acquiescence to a suggested search, his leading the way to the search area, and receipt of Miranda rights when coercive factors were also present), cert. denied, 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974).
The defendant’s statements and actions which led to seizure of the gun in question also violated Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The facts in this case show that defendant was in custody when three police officers, in three separate police cars, lights flashing, surrounded Jones’s car, blocking him from leaving the scene. At this point the police had deprived Jones of his “freedom of action” in a “significant way,” and placed him in a custodial situation. Id. at 477, 86 S.Ct. at 1629; see also New York v. Quarles, 467 U.S. 649, 655, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984); California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983); Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). They therefore should have given him Miranda warnings. During this seizure, and in response to inquiries, Jones told the police that the gun was in his apartment.
Jones’s liberty remained under restraint throughout the time period when he was escorted by two police cars back to the apartment, when police told him to stay in his car and took his car keys, and when he was in the apartment looking for the gun. During the search, Jones made inculpatory statements as described at trial by Detective McAllister:
A. I went back outside and told Mr. Jones that Jane Dufresne couldn’t find the weapon. He said: well, it’s in there. I’ll get it for you. I said: I guess you’ll have to.
Q. So you went back in [the apartment] with the Defendant?
A. Yes, he went in front of me, went through the door, and right straight back to a closet on the opposite side of the room that we were in.
Q. What happened there?
A. He said: there it is_
J.A. at 62-63 (Trial Trans. 2/18/87 at 95-96) (emphasis added); see also J.A. at 38 (Suppr. Hearing Trans, at 45).
The gun seized was a fruit of the inculpa-tory statement “there it is,” made while Jones was in custody, made in response to police interrogation, and made without Jones ever hearing Miranda warnings. Thus under Miranda, the district court erred in admitting the gun into evidence at trial.
*362 In light of the foregoing, we are of the firm conviction that the district court erred in determining that Jones’s consent was voluntary and uncoerced. As such, it was error to permit evidence at trial of the gun derived from the constitutionally impermissible search[1] and questioning. We therefore set aside the conviction, and remand this case to the district court with instructions to either grant a new trial or dismiss the indictment.

. Although Dufresne did tell police that Jones had a gun, the government has never alleged that she gave her consent to a search of the apartment she and Jones shared. Hence, the possibility of a valid third party consent to the search pursuant to United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), does not arise.